CLERK'S OFFICE U.S. DIST COURT
AT LYNCHBURG, VA
FILED

MAR 17 2009

JOHN F. CORCORAN, CLERK
BY: /s/ Tan Collmer
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DALE FRYFOGLE,<br><br>                        *Plaintiff,*<br><br>v.<br><br>FIRST NATIONAL BANK<br>OF GREENCASTLE, ET AL.,<br><br>                       *Defendants.* | CIVIL NO. 6:07cv00035<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant First National Bank of Greencastle's ("FNB Greencastle") Motion for Summary Judgment (docket no. 35). The parties have fully briefed the motion and have submitted evidence in support of their respective positions. The parties and the Court agree that the motion may be decided without a hearing. For the following reasons, the Defendant's motion for summary judgment will be granted.

I. BACKGROUND

Prior to 2002, the Plaintiff, Dale Fryfogle was in the construction business in Pennsylvania and owned two closely held corporations. The Plaintiff and his companies entered into various mortgages and loans with FNB Greencastle, which were personally guaranteed by the Plaintiff and his wife. Each note contained a confessed judgment, which was executed by the Plaintiff. Three of those notes are at issue in this case, and they are referred to by the parties as the Lindale note, the Queen's Court note, and the Nova Drive note. The Plaintiff was a guarantor on each of them. In 2002, the Plaintiff defaulted on the notes, and FNB Greencastle

filed the confessed judgments for those notes against the Plaintiff, his wife, and his companies in the Pennsylvania Court of Common Pleas. As a result, the Plaintiff filed for bankruptcy personally, and his companies also filed for bankruptcy. No later than April 8, 2004, the Plaintiff retired the debt owed to FNB Greencastle, and obtained a dismissal of his bankruptcy petitions on June 28, 2004.

Although the Plaintiff had fully satisfied his debt to FNB Greencastle on the Lindale and Queens Court judgments in April 2004, and had brought payments current on the Nova Drive judgment by that time as well, the judgments recorded in the prothonotary's office of the Court of Common Pleas were not immediately marked as satisfied. When credit reporting agencies searched the public records, it appeared that the judgments were still outstanding, and the credit reporting agencies continued to report them as such. The Plaintiff did not discover this until 2006, whereupon he contacted FNB Greencastle through counsel in September 2006 to correct the problem. The Plaintiff admitted that prior to September 2006, neither he nor his agent ever contacted the Defendant to request that it mark the judgments satisfied, and that he never paid the Defendant a satisfaction fee.

The Defendant had filed a praecipe to mark one of the judgments satisfied in January 2006. On September 26, 2006, the Defendant marked the remaining two judgments satisfied, but failed to report the proper date that the judgments had been satisfied (the Defendant reported the date as September 1, 2006). The Plaintiff then requested that FNB Greencastle correct the information regarding the date of satisfaction of the judgments, and requested that the information be conveyed to the various credit reporting agencies. FNB Greencastle sent a letter to TransUnion, LLC[1] dated November 29, 2006 to correct the information appearing on the

---

[1] TransUnion was named as a co-defendant in this case, but was dismissed as a party after reaching a settlement with the Plaintiff.

Plaintiff's credit reports. The letter contains the correct date that the judgments were satisfied, as well as the date the judgments were "satisfied of record" in September 2006.

The Plaintiff alleges that as a result of the delay in marking the judgments against him as satisfied, his credit score suffered, and he was unable to obtain financing, loans and credit for both personal and professional purposes, lost business opportunities, and paid higher interest rates on loans and credit that he did receive. The Plaintiff now brings three claims against FNB Greencastle: 1) defamation; 2) violations of the Fair Credit Reporting Act; and 3) negligence.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 250.

In considering a motion for summary judgment under Rule 56, the court must view the record as a whole and draw reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., id.* at 248–50 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir.1999).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

A court should grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Indeed, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 317).

### III. Discussion

#### A. Choice of Law

This case is brought in federal court under diversity jurisdiction. Sitting in diversity, the court must apply the law of the forum state, including its conflicts of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). The law in Virginia with regard to tort

actions is to apply *lex loci delicti*, or the law of the place where the wrongful act occurred, "even when that place differs from the place where the effects of injury are felt." *Milton v. IIT Research Institute*, 138 F.3d 519, 522 (4th Cir. 1998). "The place of the wrong" has generally been interpreted as the place where "the last event necessary to make an [actor] liable for an alleged tort takes place." *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986).

The parties appear to agree that applying the rule of *lex loci delicti*, the law of Pennsylvania applies to the negligence claim. However, the parties disagree about whether Virginia or Pennsylvania law should apply to the defamation claim. In defamation cases, the place of the harm is where the alleged defamatory statements were published. *See Wiest v. E-Fense, Inc.*, 356 F.Supp.2d 604, 608 (E.D.Va. 2005) (applying Virginia law to defamation claim where allegedly defamatory statements were published in Virginia); *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F.Supp.2d 909, 915 n.4 (E.D.Va. 2004) (same). Publication occurs when the defendant communicates the allegedly defamatory statement to a third party, and the statement is intended to be heard and understood by the third party. *Berry v. Clark*, 42 Va. Cir. 1, *2, (Va. Cir. Ct. 1996) (citing *Thalhimer v. Shaw*, 159 S.E. 87, 90 (Va. 1931)).

The Plaintiff alleges that the Defendant made defamatory statements by failing to mark the judgments satisfied in a timely manner, because that failure gave rise to the implied statement that the judgments were not satisfied, when in fact they were. These statements (assuming, *arguendo*, that they are "statements") were then republished by various third parties, such as credit reporting agencies, who obtained the information from the public records of the Pennsylvania Court of Common Pleas. The Plaintiff argues that republication occurred in Virginia when various banks obtained his credit report in the course of considering Plaintiff's applications for credit or financing.

The Plaintiff relies on *Wells v. Liddy*, 186 F.3d 505 (4th Cir. 1999), in which the Fourth Circuit held that Louisiana law applied to a defamation claim based on statements made during the course of a national radio broadcast, because although the broadcast was initiated in Virginia, it was ultimately heard in Louisiana. The *Wells* court, interpreting Maryland, not Virginia, choice of law rules, applied the Second Restatement of Conflict of Laws "most significant relationship" test. *Id.* at 528. That test provides that in a multi-state defamation claim, such as one involving a television or radio broadcast, the court should apply the law of the state which has the "most significant relationship to the occurrence and the parties." *Id.* (quoting Restatement (Second) of Conflict of laws § 150 (1971)). The test further provides that the state with the most significant relationship will usually be the state in which the plaintiff is domiciled, if publication occurred in that state. *Id.* The Plaintiff argues that Virginia courts would likewise apply the Second Restatement approach to a multi-state defamation claim, because the Virginia Supreme Court has adopted the Second Restatement view of the enforceability of contractual forum selection clauses. *See Paul Business Systems, Inc. v. Canon USA, Inc.*, 397 S.E.2d 804 (Va. 1990). Therefore, the Plaintiff argues that the law of Virginia should apply, because it is where the Plaintiff resides and where the defamatory statements were republished.

The Defendant argues that Pennsylvania law should apply because publication occurred in Pennsylvania, when the Defendant filed confessed judgments in state court, and then failed to mark them satisfied. The statements were communicated to a third party – the Court of Common Pleas – in Pennsylvania, which heard and understood them. The Defendant relies on *Wiest v. E-Fense, Inc.*, *supra*, in which the court applied the rule of *lex loci delicti*, and held that allegedly defamatory statements on a website controlled by a corporate defendant in Virginia were published in Virginia, and that Virginia law applied to the claim. Similarly, the Defendant

argues that it published the alleged statements in Pennsylvania, and that even though other parties in other jurisdictions were able to hear and understand them, the law of Pennsylvania should apply.

It is clear that FNB Greencastle published the allegedly defamatory statements in Pennsylvania, and never directly published them in Virginia. The Plaintiff bases his arguments for the application of Virginia law to his claim on the *republication* of the allegedly defamatory statements in Virginia by third parties. The parties do not cite to any choice of law cases involving republication in multiple states. Both *Wiest* and *Wells* involved multi-state publication by the defendant, not republication by third parties. There do not appear to be any factually similar Virginia state or federal cases, but the District of Delaware has held that in actions seeking to hold the original publisher liable for republication of defamatory statements, publication occurs when the defendant first made the alleged defamatory statements, rather than when the republication occurred. *See Bickling v. Kent General Hosp., Inc.*, 872 F.Supp. 1299, 1306 (D.Del. 1994). Accordingly, the law of the place where the original publication occurred should apply. In this case, the original publication occurred in Pennsylvania, so Pennsylvania law would apply.

Further, the notes and guarantees at issue contained a forum selection clause providing for application of Pennsylvania substantive law to any dispute arising out of them.[2] The Defendant argues that this case is controlled by the Virginia Supreme Court's holding in *Paul Business Systems v. Canon U.S.A., Inc.*, 397 S.E.2d 804 (Va. 1990). In *Paul Business Systems*, the plaintiff brought claims for defamation, intentional interference with contractual and economic relations, and conspiracy to injure the plaintiff's business and reputation. *Id.* at 805.

---

[2] Forum selection clauses are generally enforced by federal courts, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13 (1972), as well as in Virginia, *Paul Business Systems v. Canon U.S.A., Inc.*, 397 S.E.2d 804 (Va. 1990).

The parties had a business relationship, and the contract between them contained a forum selection clause providing for the litigation of "all disputes" in New York. *Id.* at 806. The Virginia Supreme Court held that even though the plaintiff's claims were in tort rather than breach of contract, "the causes of action asserted arose 'under' the agreements," and therefore, the forum selection clause applied. *Id.* at 808. Similarly, in this case, the Plaintiff's claims arise as a direct result of the relationship between the parties created by agreements containing a forum selection clause. That clause is applicable to Plaintiff's claims, and therefore Pennsylvania law will apply to all of Plaintiff's claims.

## B. Fair Credit Reporting Act Claim

The Plaintiff alleges that FNB Greencastle violated the FCRA by failing to report accurately to the Pennsylvania Court of Common Pleas and to consumer reporting agencies that the Plaintiff had satisfied the judgments at issue, and then by failing to accurately report the date of satisfaction of the judgments. The Plaintiff alleges that these violations were willful and caused damage, for purposes of actual, statutory, and punitive damages under 15 U.S.C. § 1681(n). The Plaintiff alleges negligence in the alternative, for purposes of recovering actual damages under 15 U.S.C. § 1681(o).

The FCRA imposes certain duties on consumer reporting agencies and on "persons" who "furnish" information relating to a consumer to consumer reporting agencies. Subsection (a) of 15 U.S.C. § 1681s-2 sets out these duties.[3] There is no private action under this subsection; instead, only the Federal Trade Commission may enforce these provisions. 15 U.S.C. § 1681s-

---

[3] For example, 15 U.S.C. § 1681s-2(a)(1) prohibits the reporting of inaccurate information, either knowingly or after notice and confirmation of error. 15 U.S.C. § 1681s-2(a)(2) requires furnishers of information to correct any incomplete or inaccurate information and notify the consumer reporting agencies of the correction, if the furnisher of information regularly furnishes such information or has furnished incorrect information to consumer reporting agencies. 15 U.S.C. § 1681s-2(a)(8) provides for regulations to allow consumers to directly request that furnishers of information investigate disputed information.

2(c) and (d); *Fino v. Key Bank of New York,* 2001 WL 849700, *4 (W.D.Pa. July 27, 2001) (citing *Olexy v. Interstate Assurance Co.,* 113 F.Supp.2d 1045, 1047 (S.D.Miss. 2000)).

Subsection (b) of 15 U.S.C. § 1681s-2 provides that after a consumer reporting agency notifies a furnisher of information pursuant to § 1681i(a)(2) of "a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency," the furnisher of information must investigate the dispute, report the results to the consumer reporting agency, and report a finding of incomplete or inaccurate information to all other consumer reporting agencies to which the person has furnished information. The Plaintiff alleges that FNB Greencastle violated this subsection of the FCRA.

"To prevail on a FCRA claim against a furnisher of information, the [plaintiff] must prove they notified a credit reporting agency of the dispute, this credit reporting agency then notified the furnisher of information, and the furnisher of information failed to investigate or rectify the disputed charge." *Beisel v. ABN Ambro Mortg., Inc.,* 2007 WL 2332494 (E.D.Pa. 2007) (citing *Jaramillo v. Experian Information Solutions, Inc.,* 155 F.Supp.2d 356, 363 (E.D.Pa.2001)). In *Biesel,* the court dismissed a claim identical to Plaintiff's, because the plaintiff in that case had not notified a consumer reporting agency of the dispute. The court held that the defendant's "FCRA duties are triggered only after the complaining party has disputed the credit information with a credit reporting agency and the credit reporting agency has notified the furnisher of information. *Id.* at *1 (citing *Thomasson v. Bank One,* 137 F.Supp.2d 721, 722 (E.D.La. 2001); *see also Dornhecker v. Ameritech Corp.,* 99 F.Supp.2d 918, 928-29 (N.D.Ill. 2000).

The Plaintiff has not met his burden of proof claim, because it is undisputed that after discovering the inaccurate information regarding the satisfaction of judgments, the Plaintiff

-9-

Case 6:07-cv-00035-NKM-mfu Document 62 Filed 03/17/09 Page 9 of 15 Pageid#: 1558

never contacted any consumer reporting agency directly. Instead, the Plaintiff contacted the Defendant and requested that the Defendant satisfy the judgments and provide the corrected information to the consumer reporting agencies. The Defendant's duties under the FCRA are triggered only after the Plaintiff reports a dispute to a consumer reporting agency, and the agency notifies the Defendant of the dispute. Therefore, summary judgment will be granted for the Defendant on this claim.

## C. DEFAMATION AND NEGLIGENCE

The Plaintiff alleges that FNB Greencastle defamed him, first by failing to timely mark the judgments against him as satisfied, and then by failing to accurately report the date that the judgments were satisfied. The Plaintiff alleges that these false statements were injurious to his reputation, hurt his credit score, caused him to lose credit and business opportunities, and caused him mental, emotional and physical pain and anguish, public humiliation and embarrassment. The Plaintiff further alleges that the Defendant was negligent because it failed to accurately record and report the satisfaction of the judgments.

1. <u>Plaintiff's Tort Claims are Preempted by 42 Pa.C.S. § 8104</u>

Pennsylvania law provides for liquidated damages against a judgment creditor for its failure to enter satisfaction of a judgment after the debtor requests it to do so. 42 Pa.C.S. § 8104. In *Herdelin v. Rosen*, 1988 WL 163985, 49 Pa. D. & C. 3d 280, 286 (Pa.Com.Pl. 1988), the court held that this statute provides the exclusive remedy for the failure of a judgment creditor to enter satisfaction of a judgment, and that it precludes a claim for common law breach of contractual duty to satisfy judgment. The *Herdelin* court clearly held that section 8104 "constitutes the sole remedy for the failure of a judgment creditor to enter satisfaction of judgment." *Id.* at 286. In *Hooper v. Commonwealth Land Title Ins. Co.*, 427 A.2d 215, 217-18 (Pa.Super. 1981), the court

similarly held that section 8104 is "the exclusive remedy for the failure of a judgment holder to enter satisfaction; and that no common law action would lie." (citing *Oberholtzer v. Hunsberger*, 1 Mona. 543 (Pa. 1889)). Plaintiff's common law claims for negligence and defamation seek damages for the failure of the Defendant to enter satisfaction of a judgment. As such, they fall squarely within the class of claims preempted by this statute, and therefore, summary judgment will be granted for the Defendant.

2. Plaintiff Failed to Prove a Prima Facie Case

Even if 42 Pa.C.S. § 8104 does not preempt Plaintiff's tort claims, he has still failed to prove a prima facie case of either negligence or defamation.

*a. Defamation*

To make a prima facie case of defamation under Pennsylvania law, the Plaintiff must show: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; (7) abuse of a conditionally privileged occasion. 42 Pa.C.S. § 8343(a); *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 903 (Pa. 2007).

The Plaintiff cannot show that the Defendant made a defamatory communication in this case, because the claim is based on the Defendant's *failure* to make a written communication. In *Comer v. National Bank of Georgia*, 363 S.E.2d 153 (Ga.App. 1987), the plaintiff sued a bank for libel for its failure to mark confession judgments against her satisfied. The plaintiff conceded that the confessed judgment was true at the time it was filed. The court held that the "failure to make a written statement" cannot be the basis of a libel action, especially where the defendant

had no affirmative obligation to make the statement. *Id.* at 154-55. There is no evidence in this case that the Defendant was under any obligation to mark the confessed judgments satisfied, until the Plaintiff complied with the procedures set out in either the FCRA or in 42 Pa.C.S. § 8104. Once the Plaintiff contacted the Defendant to request satisfaction of the judgments, the evidence shows that the Defendant complied with the Plaintiff's request fully and in a timely manner.

Further, because the confessed judgments were true at the time they were filed, the Defendant's failure to later amend or correct those statements as a result of changed circumstances cannot be the basis for a defamation claim. *See Goddard v. Protective Life Corporation*, 82 F.Supp.2d 545, 561 (E.D.Va. 2000) ("It is uncontroverted that, at the time the publication was made, it was, in fact, a true statement. . . . There simply is no authority for the proposition advanced by plaintiffs that failure to retract a statement that was indisputably true when reported becomes defamation when circumstances change or new developments occur.").

### b. Negligence

In order to establish a prima facie case of negligence, the Plaintiff must show that the Defendant owed him a duty of care, that the Defendant breached that duty, that the breach resulted in injury to the Plaintiff, and that the Plaintiff suffered an actual loss or damage that was the proximate cause of the breach. *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998).

Plaintiff's main claim of damages is that he suffered monetary losses, because he was refused loans and credit, lost business opportunities, and paid higher interest rates on loans and credit he did receive. The Plaintiff also alleges that he suffered physical and mental pain and anguish as a result of these financial injuries.[4] Specifically, the Defendant testified that he was being treated for depression that began because he was unable to conduct his business without

---

[4] However, the Plaintiff does not bring a separate claim for infliction of emotional distress

-12-

obtaining loans and credit. He also claims that a heart condition worsened as a result of his inability to conduct his business. Despite the Plaintiff's allegations of physical and mental injury, however, his negligence claim is barred by the economic loss doctrine.

The economic loss doctrine provides that no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage. *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, (3rd Cir. 2008); *Aikens v. Baltimore & Ohio R.R. Co.*, 501 A.2d 277, 278 (Pa.Super. 1985) ("[R]ecovery for purely economic loss occasioned by tortuous interference with contract or economic advantage is not available under a negligence theory."). Claims of emotional distress suffered as a result of the economic loss complained of do not remove the claims from the scope of the economic loss doctrine. *Smith v. John Hancock Ins. Co.*, 2008 WL 4072585 (E.D.Pa. 2008); *see also Valleyside Dairy Farms, Inc. v. A.O. Smith Corp.*, 944 F.Supp. 612, 617 (W.D.Mich. 1995) (holding that fraud claims were barred by the economic loss doctrine, even though plaintiff alleged humiliation, emotional distress and mental anguish, because the injuries did not involve accidental or personal injury, and because the claims arose in a context in which "economic interests are central."); *Theuerkauf v. United Vaccines Div. of Harlan Sprague Dawley, Inc.*, 821 F.Supp. 1238, 1242 (W.D.Mich. 1993)("Plaintiff cannot shield his claims from the Economic Loss Doctrine by seeking compensation for emotional distress and punitive damages. . . Allowing plaintiff to defeat the Economic Loss Doctrine by seeking compensation for emotional distress and punitive damages would also swallow the Doctrine.").

Further, the Plaintiff has failed to allege the existence of a duty owed to him by the Defendant. "The existence of a duty is a question of law for the court to decide." *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005). The relationship between Plaintiff and Defendant was

Case 6:07-cv-00035-NKM-mfu Document 62 Filed 03/17/09 Page 13 of 15 Pageid#: 1562

one of guarantor-lender and/or borrower-lender. In Pennsylvania, courts have refused to find a general duty of care between a lender and a guarantor, unless the lender assumes such a duty. *Berry v. First National Bank of Mercer County*, 892 F.Supp. 127, 128 (W.D.Pa. 1994).

The Plaintiff also alleges that he had a fiduciary relationship with the Defendant, and that the Defendant assumed a heightened duty of care with regard to the Plaintiff. However, "the legal relationship between a borrower and a bank is a contractual one of debtor and creditor and does not create a fiduciary relationship between the bank and its borrower or creditor." *Berry*, 892 F.Supp. at 128 (quoting *Bank Leumi Trust Co. of New York v. Block 3102 Corp.*, 180 A.D.2d 588 (N.Y.App.Div. 1992)); *see also Federal Land Bank of Baltimore v. Fetner*, 410 A.2d 344, 348 (Pa.Super. 1979)("Ordinarily, the relationship between the borrower and lender does not create a confidential relationship."). A fiduciary relationship may arise by operation of law only if the lender exercises substantial control over the borrower's business affairs. *G.E. Capital Mortgage Services, Inc. v. Pinnacle Mortgage Investment Corp.*, 897 F.Supp. 854, 863 (E.D.Pa. 1995). The Plaintiff in this case cannot show that the Defendant was a fiduciary or assumed the duties of one. The Plaintiff testified that the bank never helped him with his business affairs or the management of his companies. Several employees and officers of the bank also testified that they did not believe that the bank had any relationship with the Plaintiff or his companies outside of the normal lender-borrower relationship.

Finally, neither federal nor Pennsylvania law created any duty of the Defendant towards the Plaintiff. As discussed above, the Defendant's obligations under the FCRA were not triggered because the Plaintiff never contacted the credit reporting agencies directly to dispute any information on his credit report. Similarly, the Defendant's obligations under 42 Pa.C.S. § 8104 were not triggered prior to September 2006, because the Plaintiff had not submitted a

-14-

Case 6:07-cv-00035-NKM-mfu Document 62 Filed 03/17/09 Page 14 of 15 Pageid#: 1563

request for satisfaction of the judgments or the satisfaction fee. Therefore, the Plaintiff has not shown that the Defendant owed him any duty to mark the judgments at issue as satisfied, and has not met his burden of proof on his negligence claim. Accordingly, summary judgment will be granted for the Defendant.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment will be granted. An appropriate Order will follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER: This 17th day of March, 2009

                                  /s/ Norman K. Moon
                                  NORMAN K. MOON
                                  UNITED STATES DISTRICT JUDGE

-15-

Case 6:07-cv-00035-NKM-mfu   Document 62   Filed 03/17/09   Page 15 of 15   Pageid#: 1564